UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ETERNAL PRESERVATION ASSOCIATES,
LLC,

              Plaintiff and counter-defendant,

v.                                          Case Number 10-13008
                                          Honorable  David M. Lawson

ACCIDENTAL MUMMIES TOURING
COMPANY, LLC,

              Defendant and counter-plaintiff,
              and Third-party plaintiff,

v.

WOLF CAPITAL PARTNERS, INC.,

              Third-party defendant.

_____/

## OPINION AND ORDER DENYING MOTION TO DISQUALIFY COUNSEL

When allies unite in a defense against a common enemy, they might effectively select a single champion to advance their cause.  But when a dispute arises between the allies, the champion may be required to choose sides, and his divided loyalties could undermine his effectiveness.  Or so says third-party defendant Wolf Capital Partners, Inc. (Wolf).

In this case, defendant Accidental Mummies Touring Company, L.L.C. (AMTC) has been sued by plaintiff Eternal Preservation Associates, L.L.C. (EPA) for breach of a sublicensing agreement concerning the display of the mummified remains of residents of Guanajuato, Mexico. AMTC is a limited liability company owned half by Wolf and half by an entity substantially controlled by the Detroit Science Center (DSC).  The managing member of AMTC (controlled by DSC) chose DSC's law firm — Clark Hill LLC — to represent AMTC in this case.  Wolf,

understandably upset that Clark Hill sued it as a third-party defendant, contends in a motion to disqualify Clark Hill that AMTC has legal interests that may conflict with DSC's interests, and therefore DSC's lawyers should not be allowed to represent AMTC in the present case. More to the point, Wolf wants AMTC to sue DSC as well.

The Court finds that a conflict certainly exists; but the conflict is between Wolf and DSC over who should control the litigation against AMTC. Disqualifying Clark Hill would do little to resolve that conflict, and the Court finds it unnecessary to do so under the Michigan Rules of Professional Conduct. Clark Hill's loyalties are not divided, since the firm is doing the bidding of AMTC's managing member. That is not to say, however, that Clark Hill may not have a fiduciary duty to Wolf as an equal member of AMTC. For now, however, the Court concludes that Clark Hill may continue to represent AMTC in this litigation, albeit at its own peril. The motion to disqualify, therefore, will be denied.

## I.

The legal relationships in this case are intertwined, as happens when limited liability companies contract with their members, or their members' members. It begins with the efforts of one Manuel Andres Hernandez-Berlin (Berlin), who is not a party to this lawsuit, to exhibit thirty-six naturally mummified bodies that were unearthed from a cemetery near Guanajuato, Mexico between 1865 and 1958. In approximately November 2007, Berlin was granted the authority to act as an agent on behalf of the City of Guanajuato to license the right to exhibit the mummies.

On December 12, 2008 Berlin entered into a licensing agreement with plaintiff EPA, a Florida limited liability company that received a "three (3) year exclusive right . . . to market, promote and present in the United States the touring exhibition of the Momias de Guanajuato,

-2-

including all merchandising rights."  Wolf's Mot., Ex. A., Berlin Agr. at 1.  On April 16, 2009 defendant AMTC was formed for the purpose of owning, designing, fabricating, operating, producing, and managing the Accidental Mummies exhibit.

AMTC was formed by third-party defendant Wolf and a Michigan limited liability company called Marcon Eekstein, L.L.C. (Marcon Eekstein), each of which holds a 50% ownership interest in AMTC.  Marcon Eekstein, in turn, is composed of Marcon Exhibits & Events, Inc., a 67% owner, and Eekstein's Workshop, L.L.C., a 33% owner.  Eekstein's Workshop, L.L.C. is a wholly-owned subsidiary of DSC.  The record indicates that Eekstein's Workshop, L.L.C. serves as managing member of Marcon Eekstein, which means that Marcon Eekstein essentially is controlled by DSC.  AMTC's operating agreement does not designate an "Administrative Member," but the record indicates that Marcon Eekstein (and therefore DSC) has functioned as AMTC's Administrative Member without objection from Wolf.

AMTC's operating agreement required Wolf to cause EPA to grant AMTC an exclusive sublicense to exhibit the mummies on terms that paralleled EPA's license with Berlin.  That does not appear to have been a tall order, since EPA is owned by Marcus Corwin, its sole member; and Corwin also is the president of Wolf.

That sublicense was granted on June 9, 2009.  AMTC became the "exclusive [licensee] . . . to market, promote and present in the United States the Exhibition for a period of three (3) years."  Wolf's Mot., Ex. C, Sublicense Agr. at 1.  Under that agreement, AMTC was to pay EPA $1,000,000 in thirty-six monthly installments of $27,777 (the same payments EPA owed Berlin under the main licensing agreement, and which apparently were to pass through to Berlin).  In addition, AMTC was to pay Berlin all other fees that EPA agreed to pay to Berlin, which included

-3-

$8 per paid ticket for each exhibition in Chicago and Los Angeles, and $6 per paid ticket for all other exhibitions in the United States, if attendance projections were met and venue costs permitted, as well as twenty percent of all revenue received for the sale of merchandise relating to the exhibit.

AMTC's Operating Agreement also stated that the Exhibition was to open at DSC and remain there on display "until the later of (i) ninety (90) days after the date [AMTC] provides DSC written notice that is has secured a subsequent Venue, or (ii) January 1, 2011." Wolf's Mot., Ex. B, AMTC Operating Agr. § 2.3(d). Furthermore, Marcon Eekstein was required to "cause DSC to enter into the Exhibition Agreement" and to "guarant[y] DSC's performance of its obligations [as listed] and the Exhibition Agreement to be executed between [AMTC] and DSC." *Ibid.*

Since Marcon Eekstein was managed by DSC, as noted earlier, procuring the exhibition agreement could not have been difficult. In fact, on that same June 9, 2009, AMTC and DSC entered into a Traveling Exhibition Agreement, stating "their intention that the Exhibition be exhibited at the [DSC] Facility [from October 10, 2009 through April 11, 2010] and subsequent Bi-Monthly Term(s)." Wolf's Mot., Ex. D, Traveling Exhibition Agr. ¶ 2. The agreement also included an exhibition display period that paralleled the one in AMTC's operating agreement.

It was reported that "The Accidental Mummies of Guanajuato" exhibition was scheduled to make a seven-city tour of the United States starting in 2009 and continuing though 2012. However, the mummies' first stop was at the Detroit Science Center, and there they remain. The exhibit appeared from October 2009 through January 2010, but after initial interest, ticket sales waned, and by March 2010, the exhibition was not generating sufficient revenue to cover its costs and fees.

-4-

Wolf alleges that a dispute arose over fees owed under the Berlin agreement.  Sometime between January and March 8, 2010, DSC threatened to close the Exhibition as of April 12, 2010 if the contractual relationship between EPA and Berlin were not resolved to DSC's satisfaction.

Around this time, the Corwin company lawyers (a Florida law firm on behalf of Wolf and EPA) began to raise concerns about DSC's role as the manager of Marcon Eekstein, and therefore as the Administrative Member of AMTC.  In a letter to DSC's CEO Kevin Prihod dated Match 8, 2010, an attorney for Wolf asked for a change of ATMC's Administrative Member.  A week later, the same lawyer wrote to Prihod to declare AMTC in default of the sublicense agreement.  In another letter from that lawyer sent to Prihod that same day, Wolf accused DSC (as the managing member of Marcon Eekstein) of causing AMTC to breach its own operating agreement by failing to facilitate the relocation of the exhibit to other locations.

Meanwhile, Berlin apparently was not getting paid.  An attorney on his behalf suggested that a settlement conference be held.  It appears that efforts to reach a resolution were made by lawyers on behalf of the Corwin companies, Berlin, and DSC.  Clark Hill, the law firm challenged in the present motion, represented DSC in those discussions.  Clark Hill notified the respective attorneys for Berlin and EPA (and Wolf) that DSC would pay the exhibition receipts otherwise payable to AMTC into an escrow account held by Marcon Eekstein.

For several months, the attorneys for the three principal interests engaged in settlement discussions.  On April 6, 2010, EPA's attorney purported to terminate the sublicense agreement with AMTC, although he instructed DSC to continue hosting the exhibit.  Wolf alleges that as of that date, Marcon Eekstein resigned as Administrative Member of AMTC, although the record contains no evidence of that.  Settlement was not reached, and on July 30, 2010 EPA filed suit against AMTC

for breach of the sublicense agreement. On September 16, 2010, Clark Hill filed an answer to the complaint on behalf of AMTC. It also filed a counterclaim against EPA for breach of contract and added Wolf as an additional counterclaim defendant (denominated as a "third-party defendant"). AMTC alleges in the counterclaim that EPA failed to make payments to Berlin, thereby jeopardizing the license agreement, and improperly withdrew the sublicense, and Wolf failed to secure a continuance of the sublicense agreement with AMTC.

On September 20, 2010, Wolf's Florida attorneys contacted Clark Hill and demanded that the firm withdraw as counsel for AMTC because (1) AMTC's managing member had no authority to hire counsel unilaterally, and (2) Clark Hill represents DSC, whose interests are adverse to AMTC's under the Traveling Exhibition Agreement between AMTC and DSC. On October 13, 2010, a different lawyer on behalf of Wolf (from the Butzel law firm in Detroit) contacted Clark Hill and threatened aggressive action against AMTC by Wolf if Clark Hill did not withdraw as its attorneys. The Butzel lawyer argued that AMTC should be pushing the liability downstream toward DSC, since DSC had obligations under the Traveling Exhibition Agreement, and Clark Hill was not in a position to do that. He also argued that Marcon Eekstein had resigned as Administrative Member of AMTC and therefore had no authority to hire counsel to defend the lawsuit.

Neither AMTC nor Clark Hill would yield, so Wolf filed the present motion to disqualify Clark Hill. Unsurprisingly, EPA filed a joinder in the motion, although it has not developed an argument why Clark Hill's representation of AMTC would harm EPA. The Court heard oral argument on December 20, 2010.

-6-

II.

Courts have the inherent authority to prevent individuals from practicing before it. *D.H. Overmyer Co., Inc. v. Robson*, 750 F.2d 31, 33 (6th Cir. 1984). "The power is one which ought to be exercised with great caution, but which is, we think, incidental to all Courts, and is necessary for the preservation of decorum, and for the respectability of the profession." *Ex parte Burr*, 22 U.S. (9 Wheat.) 529, 531 (1824) (Marshall, C.J.).

"Unquestionably, the ability to deny one's opponent the services of capable counsel, is a potent weapon. Confronted with such a motion, courts must be sensitive to the competing public policy interests of preserving client confidences and of permitting a party to retain counsel of his choice." *Manning v. Waring, Cox, James, Sklar and Allen*, 849 F.2d 222, 224 (6th Cir. 1988). "A court should only disqualify an attorney 'when there is a reasonable possibility that some specifically identifiable impropriety actually occurred.'" *Moses v. Sterling Commerce (America), Inc.*, 122 Fed. App'x. 177, 183-84 (6th Cir. 2005) (quoting *Kitchen v. Aristech Chem.*, 769 F. Supp. 254, 257 (S.D. Ohio 1991)). In determining whether disqualification ought to occur, the Court must account for "'the traditional concerns of the legal profession that client confidences be protected and that appearances of professional impropriety be avoided.'" *DeBiasi v. Charter County of Wayne*, 284 F. Supp. 2d 760, 770-71 (E.D. Mich. 2003) (quoting *Manning v. Waring, Cox, James Sklar and Allen*, 849 F.2d 222, 225 (6th Cir. 1988)). A state's ethics rules are appropriate standards against which to measure the propriety of an attorney's conduct for the purpose of determining whether a lawyer should be disqualified in a particular case. *National Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. Alticor, Inc.*, 466 F.3d 456, 457-58 (6th Cir. 2006), *vacated on other grounds*, 472

-7-

F.3d 436 (6th Cir.  2007) (citing *Evans & Luptak, PLC v. Lizza*, 251 Mich. App. 187, 650 N.W.2d 364, 368-69 (2002)).

## A. Conflict

Wolf's main argument is that Clark Hill's representation of AMTC it tainted by a conflict of interest because AMTC and DSC each have potential claims against the other, which Clark Hill is not in a position to pursue because it also represents DSC.  Wolf would like to see AMTC sue DSC for breaching the Traveling Exhibition Agreement by its unauthorized and premature closing of the Exhibition .  AMTC responds that there is no actual conflict because DSC is not a party to this case, and even if were to become one, the documents Wolf attached to its motion show that AMTC's and DSC's interests actually are aligned.  AMTC also asserts that if there is a conflict of interest, all interested parties have waived it.

A court may disqualify an attorney for having a conflict of interest. See *National Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 472 F.3d at 437.  Rule 1.7(b) of the Michigan Rules of Professional Conduct states:

> A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests unless:
> (1) the lawyer reasonably believes the representation will not be adversely affected; and
> (2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

Mich. R. Prof'l Conduct § 1.7(b).  When a client appears to have consented to a conflict of interest, the question becomes whether the attorney "reasonably believes the representation will not be adversely affected."  Not all conflicts are waivable: when an attorney cannot reasonably believe that its representation will not be adversely affected, the conflict cannot be waived.  *See Centra, Inc. v.*

-8-

*Estrin*, 538 F.3d 402, 413 (6th Cir. 2008). The Comments to Mich. R. Prof'l Conduct 1.7(b) state: "An impermissible conflict may exist by reason of substantial discrepancy in the parties' testimony, incompatibility in positions in relation to an opposing party, or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question." Mich. R. Prof'l Conduct 1.7(b) cmt.

AMTC's argument that a conflict of interest can be waived effectively is problematic. The waiver letter in this case was drafted by Clark Hill. It was executed by Kevin Prihod in his capacity as president of DSC and manager of Marcon Eekstein, the administrative member of AMTC. The letter outlines the fact that "Clark Hill's representation of AMTC may indirectly raise a potential conflict of interest between Marcon Exhibits, Eekstein's Workshop, and the DSC." Resp. to Mot., Ex. K at 1. The letter notes that "based on our discussions, it is clear that the parties possess a commonality of interest regarding the representation of AMTC against EPA and the Exhibition and are not adverse with one another or the DSC." *Ibid.* Prihod signed the letter on behalf of Eekstein's Workshop and DSC, and Robert Gardella signed on behalf of Marcon Eekstein and himself in his individual capacity.

When an organization deals with its officers, directors, or members, Michigan law respects the separate identities of those involved, especially with respect to matching lawyers with clients. *Fassihi v. Sommers, Schwartz, Silver, Schwartz & Tyler, P.C.*, 107 Mich. App. 509, 514, 309 N.W.2d 645, 648 (1981) (holding that "[a] corporation exists as an entity apart from its shareholders, even where the corporation has but one shareholder. . . . [T]he general proposition of corporate identity apart from its shareholders leads us to conclude, in accordance with decisions from other jurisdictions, that the attorney's client is the corporation and not the shareholders"). The ethics rules

allow an lawyer to represent both an organization and one or more constituent members, but the usual conflict rules apply. Mich. R. Prof'l Conduct § 1.13(e). However, the waiver rule contains a special provision:

> A lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders, or other constituents, subject to the provisions of Rule 1.7. If the organization's consent to the dual representation is required by Rule 1.7, *the consent shall be given by an appropriate official of the organization other than the individual who is to be represented, or by the shareholders.*

*Ibid.* (emphasis added). Under that rule, if a conflict between AMTC and Clark Hill's other client, DSC, is to be waived, the waiver must be made by an entity *not* controlled by DSC. According to AMTC's organizational chart, that would leave Wolf to make the decision, and it is safe to say that consent from that territory will not be forthcoming.

The question remains, however, whether there exists a conflict of interest governed by the Rules of Professional Conduct. The conflict that Wolf identifies extends well beyond Clark Hill's involvement as AMTC's lawyer. The root cause of the dispute is the disagreement between the interests controlled by Marcus Corwin — that is, EPA and Wolf — and those controlled by DSC — which include Marcon Eekstein, Eekstein's Workshop, L.L.C., and, at least for now, AMTC. That conflict plays out in the context of this case in the fight over who controls AMTC.

According to the filed papers in this case, it appears that there is no shortage of finger pointing between those parties. Each side accuses the other of having some responsibility for the failure of the exhibition and for payment of expenses and losses. DSC has alleged that AMTC owes it expenses for assembling and maintaining the exhibit. But DSC also contended that it closed the exhibit in part because EPA breached its agreements with Berlin, suggesting that the source of the problem is the Corwin entities. Wolf contends, on the other and, that if AMTC is found liable to

-10-

EPA, DSC may be responsible for all or part of those damages because it thwarted AMTC's efforts to find a new (and more lucrative) venue for the exhibition. Wolf also argues that DSC violated the Traveling Exhibition Agreement (a contract between AMTC and DSC) when it closed the exhibit. Wolf reasons that Clark Hill may be hindered from impleading DSC on these claims because it represents DSC.

Wolf points to the comment to Michigan Rule of Professional Conduct 1.7(b) as an illustration of the conflict of interest faced by Clark Hill. That comment states, "Loyalty to a client is . . . impaired when a lawyer cannot consider, recommend, or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests. The conflict in effect forecloses alternatives that would otherwise be available to the client." Mich. R. Prof'l Conduct § 1.7(b) cmt. However, as long as DSC controls AMTC, Clark Hill will not face that conflict. Clark Hill must follow the instruction of its client, and it must give advice unfettered by conflicting loyalty to another client. But it is unlikely that AMTC would consider the possibility of a suit against DSC while an entity controlled by DSC determines AMTC's litigation decisions. As long as DSC-controlled interests are in a position to decide what is in AMTC's best interests, Clark Hill's simultaneous representation of both AMTC and DSC will not violate Michigan Rule of Professional Conduct 1.7.

The situation would be the same if the shoe were on the other foot. If the Wolf interests controlled AMTC and attorneys of Wolf's choice represented it, there is little chance that Wolf would be impleaded in the lawsuit, although DSC likely would find itself a party. DSC may then claim a conflict of interest if the lawyer Wolf selected would not bring Wolf into the case. No

matter which entity controls AMTC, the likelihood of finding counsel that would be "neutral" would be quite remote.

It is important to note that Wolf's claim of conflict of interest is not based on Clark Hill's possession of confidential information, *see Barkley v. City of Detroit*, 204 Mich. App. 194, 204, 514 N.W.2d 242, 246 (1994) (holding that "an attorney may only undertake to represent a new client against a former client . . . where there is no confidential information received from the former client that is in any way relevant to representation of the current client") (citing *General Elec. Co. v. Valeron Corp.*, 608 F.2d 265, 267 (6th Cir. 1979)), or its prior representation of a Corwin entity, *see Alpha Capital Mgmt., Inc. v. Rentenbach*, 287 Mich. App. 589, ---, --- N.W.2d ---, --- (2010) (noting that "under the common law and pursuant to the rules of professional responsibility, the continuing duties of loyalty and confidentiality apply only to matters in which the new client's interests qualify as both adverse to those of the former client *and* substantially related to the subjects of the attorney's former representation"). Instead, it is based on the idea that Clark Hill, taking instruction from the managing member of AMTC, Marcon Eekstein (which is manages by Eekstein's Workshop, L.L.C., in turn wholly owned by DSC), will not pursue a litigation strategy that Wolf would like and DSC may not. That cannot constitute a violation of Michigan Rule of Professional Conduct 1.7(b); if it did, no lawyer could represent AMTC in the present litigation, regardless of which of the fifty percent members controlled AMTC. Disputes between constituent members over control of an entity should not be resolved under the guise of an attorney conflict of interest.

That is not to say that Wolf may not have recourse against Clark Hill directly. An attorney who represents a closely held corporation and a controlling shareholder may also have a fiduciary

to the other shareholder(s).  *See Fassihi*, 107 Mich. App. at 515, 516, 309 N.W.2d at 648, 649 (holding that even where no attorney-client relationship exists between a shareholder and the corporate attorney, "this does not necessarily mean that [the law firm] had no fiduciary duty to [the shareholder]," and observing that "[i]nstances in which the corporation attorneys stand in a fiduciary relationship to individual shareholders are obviously more likely to arise where the number of shareholders is small. In such cases it is not really a matter of the courts piercing the corporate entity"); *see also Schaeffer v. Cohen, Rosenthal, Price, Mirkin, Jennings & Berg, P.C.*, 541 N.E.2d 997, 1002 (Mass. 1989) ("Indeed, there is logic in the proposition that, even though counsel for a closely held corporation does not by virtue of that relationship alone have an attorney-client relationship with the individual shareholders, counsel nevertheless owes each shareholder a fiduciary duty.") (citing *Fassihi*).

These are dangerous waters for any law firm, and they must be navigated carefully.  Any law firm representing AMTC, having to decide which of the two equal members from which to take direction, would find itself in this predicament.  Perhaps even a file full of consents would not provide safe harbor.  But unless counsel founders, disqualification is not warranted.

## B.  Standing

Wolf also argues that AMTC did not have the authority to hire Clark Hill under the terms of the operation agreement.  Wolf contends that the decision to hire counsel is a "Major Decision," as defined in section 5.2 of the AMTC Operating Agreement, and major decisions require unanimous consent of all members.  In a related argument, Wolf states that AMTC does not have standing to file a claim against it for breach of the AMTC Operating Agreement because the

-13-

Operating Agreement is a contract between Wolf and Marcon Eekstein, not between Wolf and AMTC.  Neither of these contentions, even if true, warrant disqualification of Clark Hill.

The first argument frames a dispute between Wolf and Marcon Eekstein over the latter's authority to spend money and take action on behalf of AMTC.  If Wolf wants to press the point, it must do so against the proper party in the proper forum.  *See* Mich. Comp. Laws § 450.4515(1)(c) ("A member of a limited liability company may bring an action in the circuit court of the county in which the limited liability company's principal place of business or registered office is located to establish that acts of the managers or members in control of the limited liability company are illegal or fraudulent or constitute willfully unfair and oppressive conduct toward the limited liability company or the member.  If the member establishes grounds for relief, the circuit court may issue an order . . . providing for . . . [t]he direction, alteration, or prohibition of an act of the limited liability company, or of members, managers, or other persons party to the action.").  An alleged breach of the Operating Agreement, however, does not furnish a basis to invoke this Court's inherent power to prevent a lawyer from practicing before it.

The second argument amounts to an affirmative defense to the third-party complaint.  Suggesting that disqualification of the AMTC's law firm follows from a lack of standing to bring an action is a *non sequitur*.  It has nothing to do with an alleged conflict of interest, and it provides no other ground for disqualification.

III.

No party contends that Clark Hill is in possession of confidential information belonging to Wolf, and the Court concludes that there is no conflict that arises from Clark Hill's representation of AMTC while it is under the control of an entity directed by DSC.

-14-

Accordingly, it is **ORDERED** that the motion by third-party defendant Wolf Capital Partners, Inc. to disqualify counsel for AMTC [dkt #15] is **DENIED**.

It is further **ORDERED** that counsel for the parties shall appear for a case management conference on **January 13, 2011** at **10:30 a.m.**


s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   January 3, 2011

<div style="border:1px solid black; padding:10px;">

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 3, 2011.

s/Deborah R. Tofil
DEBORAH R. TOFIL

</div>